<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **POLITZ ENTERPRISES, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **EVANSTON INSURANCE COMPANY,** *et al.*, <br><br> Defendants. | Civil Action No. 25-1919 (ZNQ) (JTQ) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

  **THIS MATTER** comes before the Court upon the following Motions: (1) a Motion to Dismiss filed by Defendant Evanston Insurance Company ("Evanston") (the "Motion to Dismiss," ECF No. 34); (2) a Motion for Judicial Notice filed by Evanston (the "Motion for Judicial Notice," ECF No. 35); and (3) a Motion to Amend/Correct Answer to Assert Cross-Claim for Coverage filed by Defendants Morgan Properties Management Company, LLC ("Morgan") and East Coast Elmwood Village, LLP ("East Coast") (the "Motion to Amend," ECF No. 59).

  The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Evanston's Motion to Dismiss and Motion for Judicial Notice and **DENY** Morgan and East Coast's Motion to Amend.

1

## I.   BACKGROUND

This matter involves an insurance coverage dispute arising out of a workplace injury that occurred during a construction project.

### A.   THE PARTIES

Plaintiff Politz Enterprises, Inc. ("Politz") is a company that provides construction and roofing services.  (*See* Am. Compl., ECF No. 11 ¶ 1.)

Defendant Lifetime Contractor Corporation ("Lifetime") performs subcontracted construction and carpentry work.  (*Id.* ¶ 2.)  Defendants Evanston, Markel Service, Inc., and Amwins Access Insurance Services[1] are liability insurance carriers that provide commercial general liability insurance.  (*Id.* ¶ 3.)

Defendants Morgan and East Coast own and/or manage property.  (*Id.* ¶ 4.)  Politz contracted to perform construction services to property owned and/or managed by Defendants Morgan and East Coast.  (*Id.*)  Politz subcontracted some construction services to Lifetime.  (*Id.*)

### B.   THE POLICY

Evanston issued an insurance policy to Politz under policy number 3AA374897 (the "Policy").  (*Id.* ¶ 3.)  The Policy was effective from December 16, 2019, through December 16, 2020.  (*See id.; see also* Motion to Dismiss, Ex. E.)

In relevant part, the Policy contains the following exclusion:

> ***Emloyer's Liability***
>
> *"Bodily injury" to:*
>
> *(1) An "employee", "volunteer worker" or "temporary worker" of the insured arising out of and in the course of:*
>
> > *(a) Employment by the injured; or*

---

[1] Markel Claims and Amwins Access Insurance Services were initially named as Defendants, but were both voluntarily dismissed on May 27, 2025.  (*See* ECF Nos. 21, 22.)

*(b) Performing duties related to the conduct of the insured's business;*

*(2) Any other person who performs labor in any capacity for or on behalf of any insured, with or without any form of compensation; or*

*(3) The spouse, partner, child, parent, brother, sister or any other relative of any person described in Paragraph (1) or (2) above as a consequence of Paragraph (1) or (2) above.*

*This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.*

*This exclusion applies to any liability assumed under an "insured contract."*

*       *       *

***Bodily Injury To Contractors Or Subcontractors***

*"Bodily injury" to any:*

*(1) Contractor or subcontractor while working on behalf of any insured;*

*(2) Employee, volunteer worker, leased worker or temporary worker of such contractor or subcontractor indicated in Paragraph (1) above;*

*(3) Additional subcontractor, including the employees, volunteer workers, leased workers or temporary workers of such contractor or subcontractor indicated in Paragraph (1) above; or*

*(4) Any other person who performs labor in any capacity for or on behalf of any person indicated in Paragraph (1), (2) or (3) above, with or without any form of compensation.*

*This exclusion applies:*

*       *       *

*(b) Whether the insured may be liable as an employer in any other capacity;*

3

> *(c) To any obligation to share damages with or repay someone else who must pay damages because of the injury; and*
>
> *(d) To liability assumed by the insured under an "insured contract."*

(Motion to Dismiss, Ex. E to Ex. E.)

### C.     THE CARCAMO MATTER IN STATE COURT

Politz is a defendant in a separate New Jersey State Court lawsuit arising out of an event that led to his injury on October 24, 2020 (Docket No. MER-L-1819-22) (the "Carcamo Matter"). (Am. Compl. ¶ 5.)  Politz was also named as a third-party defendant for contractual insurance claims brought by Morgan and East Coast in the Carcamo Matter.  (*Id.* ¶ 6.)  Politz includes the Complaint filed in the Carcamo Matter (the "Carcamo Complaint") as Exhibit B to the Declaratory Judgment Complaint presently before this Court.  (*See id.*, Ex. B.)

The Carcamo Complaint includes eighteen counts related to personal injuries Carcamo allegedly sustained on October 24, 2020, when he fell through a roof at a job site owned and/or managed by Morgan and East Coast (the "Elwood Village Site").  The Carcamo Complaint names Morgan, East Coast, and Lifetime as defendants.[2]  (*See id.*, Ex. B.)  Seventeen of the eighteen counts asserted are negligence claims against the defendants.  (*See id.*)  Two of those seventeen counts are asserted against Politz.  (*Id.*)

Count Fifteen of the Carcamo Complaint alleges that "[u]pon information and belief, on or about October 24, 2020, . . . Carcamo[ ] was on [the Elwood Village Site] as an employee of the defendants and was [acting within] the scope of his employment at the time of the subject accident."  (*See id.* at Fifteenth Count ¶ 2.)

---

[2] Fincor Construction, Inc. ("Fincor"), Emerson Rocha, Sowers Construction, LLC, Jason Sowers, Dilan Construction, LLC, Osman Inestrosa, and North American Construction were also named as defendants.

Thereafter, Carcamo filed an amended complaint in the Carcamo Action (the "Carcamo Amended Complaint"). (Motion to Dismiss, Ex. D.)

        1.      The Third-Party Complaint

On October 5, 2023, Morgan and East Coast filed a third-party complaint in the Carcamo Matter (the "Third-Party Complaint"). (Motion to Dismiss, Ex. E.) Morgan and East Coast asserted contribution, contractual and/or common law indemnification, and breach of contract claims against Politz and Lifetime.[3] (*See id. generally*.) The Third-Party Complaint alleges that Carcamo "was employed by a subcontractor of Politz[ ]." (*Id.* at Third Party Complaint ¶ 4.) The Third-Party Complaint then identifies "Lifetime Contractors" as Plaintiff's employer. (*Id.*)

**D.     THE DECLARATORY JUDGMENT COMPLAINT**

Politz submitted a demand for defense and indemnity to its liability carrier and its servicing agents, including Evanston. (*Id.* ¶ 7.) Evanston denied Politz's demand. (*Id.*) Thereafter, Morgan and East Coast initiated a further demand and tender to Evanston for contractual coverage, including defense and indemnity. (*Id.* ¶ 8.) The second demand was similarly denied. (*Id.*)

While the Carcamo Matter continues to be litigated in State Court, on January 6, 2025, Politz filed a Declaratory Judgment Complaint in the Superior Court of New Jersey, Law Division, Mercer County. (*See id. generally*.) This matter was thereafter removed to federal court on March 17, 2025. (*See* ECF No. 1.) In his Amended Complaint, Politz asserts three claims against Evanston: (1) a breach of contract claim for defense and indemnity ("Count One"); (2) a breach of contract claim for failure to accept tender ("Count Two"); and (3) an unfair claim settlement practices claim under N.J. Admin. Code § 11:2-17.1, *et seq.* ("Count Three"). (*See id. generally*.)

---

[3] The claims were also asserted against Fincor and North American.

## II.    SUBJECT MATTER JURISDICTION

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as this matter involves claims between diverse citizens and the matter in controversy exceeds $75,000.

## III.    LEGAL STANDARD

### A.    MOTION TO DISMISS

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*,

515 F.3d at 234 (citation and internal quotation marks omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and internal quotation marks omitted)).

In sum, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotation marks omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (internal quotation marks omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (internal quotation marks and brackets omitted).

### B. MOTION TO AMEND

Rule 15(a)(2) authorizes a party to amend its pleadings "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) further instructs that "[t]he court should freely give leave when justice so requires." *Id*. Though within the discretion of the Court,

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Although delay alone does not justify denying a motion to amend, a motion for leave to amend a pleading should be denied when the delay is undue. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Delay becomes undue "when a movant has had previous opportunities to amend a complaint." *USX Corp. v. Barnhart*, 395 F.3d 161, 167-68 (3d Cir. 2004) (citing *Cureton*, 252 F.3d at 273). In determining whether a motion to amend should be denied due to undue delay, courts focus on "the plaintiffs' motives for not amending their complaint to assert [the proposed claim] earlier." *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). Courts also consider "whether new information came to light or was available earlier to the moving party." *Ford Motor Co. v. Edgewood Properties, Inc.*, 2011 WL 1599609, at *3 (D.N.J. Apr. 27, 2011) (citing *In re Adams Golfing Securities Litigation*, 381 F.3d 267, 280 (3d Cir.2004)). Undue prejudice exists where the non-moving party is "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the [moving party] been timely." *Heyl & Patterson International, Inc. v. F.D. Rich Housing, Inc.*, 663 F.2d 419, 426 (D.N.J. 1981).

## IV.    **DISCUSSION**

### A.    **MOTION FOR JUDICIAL NOTICE**

As an initial matter, the Court has reviewed Evanston's Motion for Judicial Notice pursuant to Federal Rule of Evidence 201, in which Evanston asks the Court to take judicial notice of the Carcamo Matter, captioned as *Carcamo v. Morgan Properties Management Company, LLC, et al.*, filed in the Superior Court of New Jersey under Docket No. MER-L-1819-22. (ECF No. 35.)

In Morgan and East Coast's opposition to the Motion to Dismiss, Morgan and East Coast agree that the Carcamo Complaint and the Carcamo Amended Complaint are "integral to or implicitly relied upon by the complaint in this matter." (*See* Morgan & East Coast Opp'n. Br. at

10.)  However, Morgan and East Coast argue that their Answer and Third-Party Complaint should not be considered by the Court, as these materials "go beyond the pleadings."  (*Id.*)

When deciding a motion to dismiss, the Court "generally consider[s] only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  An exception to this general rule is that a court may consider "a document integral to or explicitly relied upon in the complaint," without converting the motion to dismiss into a motion for summary judgment.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).  Thus, a court should not consider "evidence outside the amended complaint unless (1) the document is incorporated by reference, or (2) the adjudicative fact at issue is subject to judicial notice."  *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 260 n.31 (3d Cir. 2009).)

Here, Evanston argues that the materials in contention are subject to judicial notice because they represent filings in a New Jersey State Court action.  The state court filings—including Morgan and East Coast's Answer and Third-Party Complaint—are matters of public record, and as such this Court may take judicial notice of them.  *Radcliff v. Radcliff*, Civ. No. 20-3669, 2020 WL 7090687, at *4 (D.N.J. Dec. 4, 2020).  This includes "the record from a previous court proceeding between the parties."  *Jonas v. Gold*, Civ. No. 13-2949, 2014 WL 4854484, at *6 (D.N.J. Sept. 30, 2014) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988)); *see also Holmes v. Christie*, Civ. No. 16-1434, 2018 WL 6522922, at *1 n.1 (D.N.J. Dec. 12, 2018) (quoting *Johnson v. Pugh*, Civ. No. 11-385, 2013 WL 3013661, at *2 (E.D.N.Y June 18, 2013) ("A court may take judicial notice of matters of public record, including pleadings, testimony, and decisions in prior state court adjudication, on a motion to dismiss pursuant to Rule 12(b)(6).")); *Unitrin Auto & Home Ins. Co. v. Clayton Corp.*, Civ. No. 15-2079,

2016 WL 8199315, at *1 n.1 (M.D. Pa. Apr. 20, 2016) (citing *O'Boyle v. Braverman*, 337 Fed. App'x 162, 164–65 (3d Cir. 2009)).

This court "may take judicial notice of court dockets and docket entries." *Roche v. Aetna, Inc.*, Civ. No. 22-607, 2023 WL 3173394, at *4 (D.N.J. May 1, 2023); *see also Lane v. Div. of Child Prot. & Permanency*, Civ. No. 22-4238, 2023 WL 22426, at *1 (D.N.J. Jan. 3, 2023). The Court finds that all filings on the docket in the Carcamo Matter are public records and therefore fall within the purview of Federal Rule of Evidence 201. Accordingly, the Court finds it can consider them for the purposes of the pending motions.

### B.    MOTION TO DISMISS

Evanston moves to dismiss the Complaint pursuant to Rule 12(b)(6), asserting that Politz attempts to "rewrite a commercial general liability policy that, by its plain terms, affords no coverage for the workplace accident at issue." (Motion to Dismiss Moving Br. at 1.) Evanston asserts that it is "not obligated to defend or indemnify Politz, Morgan[,] . . . or East Coast" in connection with Carcamo's injuries "because the Bodily Injury to Subcontractor Exclusion contained in the . . . Policy fully precludes coverage." (*Id.*) In opposition, Politz opposes the Motion to Dismiss, asserting that discovery in the Carcamo Matter is "incomplete" and that Carcamo's status as an employee is at issue, and that the Policy does in fact cover Politz. Additionally, Morgan argues that Evanston's Motion to Dismiss is premature.

### 1.    Indemnification

"Indemnification is available under New Jersey law . . . when a contract explicitly provides for indemnification." *Fireman's Fund Ins, Co. v. 360 Steel Erectors, Inc.*, Civ. No. 16-2782, 2018 WL 1069417, at *4 (D.N.J. Feb. 26, 2018). "[A] party is entitled to indemnification only if he or she is without fault and his or her liability is purely constructive, secondary or vicarious." *Id.*

10

The determination of whether a contract provides for indemnification is relatively straightforward. *See In re Tarragon Corp.*, Civ. No. 09-10555, 2010 WL 3928496, at *3 (Bankr. D.N.J. Oct. 1, 2010). Under governing New Jersey contract law, a "contract of indemnity is to be interpreted in accordance with the rules governing the construction of contracts generally." *Andre Constr. Assoc., Inc. v. Catel Inc.*, 681 A.2d 121, 123 (N.J. Super. L. Div. 1996). "Where the obligations of the parties are clear and unambiguously set forth in the indemnity agreement, the court should summarily enforce such indemnification provisions." *Id.* (citing *Levison v. Weintraub*, 521 A.2d 909, 910 (N.J. Super. A.D. 1987)). "With regard to express contractual language, New Jersey law directs courts to construe a contractual indemnity provision in the same way it construes any other part of a contract—with the goal of determining the parties' intent." *Lukacs v. Purvi Design LLC*, Civ. No. 21-19599, 2023 WL 6439877, at *4 (D.N.J. Oct. 2, 2023) (citing *Kieffer v. Best Buy*, 14 A.3d 737, 743 (2011)).

Politz and Lifetime entered into a Master Subcontractor Agreement on February 17, 2020. (Motion to Dismiss, Ex. B.) The Master Subcontractor Agreement states that Politz was to engage Lifetime (identified as the "Subcontractor") to perform services on "all future projects" in which Politz requires subcontractor services. (*Id.*) Specifically, Lifetime was to provide roofing installation services as subcontractor. (*Id.*) Additionally, in its crossclaim against Lifetime, Politz seeks contractual indemnification, admitting that Politz subcontracted work to Lifetime on the Elwood Village Site. (*Id.*) And, in the Third-Party Complaint, Morgan and East Coast admit that: (1) they hired Politz; (2) Politz hired Lifetime; and (3) Lifetime hired Carcamo. (Motion to Dismiss, Ex. E.)

Put simply, East Cost and Morgan owned and/or managed the Elmwood Village Site. East Coast and Morgan contracted with Politz to complete construction at the Elmwood Village Site.

Politz subcontracted with Lifetime, and Lifetime employed Carcamo at the Elmwood Village Site. The Policy's Bodily Injury to Subcontractor Exclusion expressly prohibits coverage for injuries suffered by any of the insured's—Politz's—subcontractor or contractor employees. The plain language of the Policy is clear. Coverage is precluded for all claims brought by the insureds because Politz hired Lifetime, which allegedly employed Carcamo at the time of the accident.

### 2.     Recovery for Undocumented Workers

Politz opposes Evanston's Motion to Dismiss, contending that the policy exclusions for employees cannot, as a matter of law, apply because Carcamo is undocumented and therefore ineligible for legal employment. (*See* Politz Opp'n Br. at 5–6.) Politz's theory is that Carcamo's injuries should be covered because he is not an employee given that "[a] person may not assert employment related claims because of their immigration status." In support, it cites to *Crespo v. Evergo Corp.*, 366 N.J. Super. 391 (App. Div. 2004). (*Id.*)

Federal law does bar undocumented workers from pursuing certain types of claims. The Immigration Reform and Control Act of 1986, 8 U.S.C. § 1324a, *et seq.* ("IRCA") is a "comprehensive scheme prohibiting the employment of illegal aliens in the United States." *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147 (2002). In *Hoffman*, the plaintiff contested an order of the National Labor Relations Board ("NLRB") that awarded back-pay to an undocumented worker for his improper termination under the National Labor Relations Act. *Id.* at 140–42. The Supreme Court explained:

> IRCA "forcefully" made combating the employment of illegal aliens central to "[t]he policy of immigration law." *INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 194 and n. 8, 112 S. Ct. 551, 116 L.Ed.2d 546 (1991). It did so by establishing an extensive "employment verification system," § 1324a(a)(1), designed to deny employment to aliens who (a) are not lawfully present in the United States, or (b) are not lawfully authorized to work in the United States, § 1324a(h)(3). This verification system is critical to the IRCA regime. To enforce it, IRCA mandates that employers verify

12

the identity and eligibility of all new hires by examining specified documents before they begin work. § 1324a(b). If an alien applicant is unable to present the required documentation, the unauthorized alien cannot be hired. § 1324a (a) (1).

Similarly, if an employer unknowingly hires an unauthorized alien, or if the alien becomes unauthorized while employed, the employer is compelled to discharge the worker upon discovery of the worker's undocumented status. § 1324a(a)(2). Employers who violate IRCA are punished by civil fines, § 1324a(e)(4)(A), and may be subject to criminal prosecution, § 1324a(f)(1). IRCA also makes it a crime for an unauthorized alien to subvert the employer verification system by tendering fraudulent documents. § 1324c(a). It thus prohibits aliens from using or attempting to use "any forged, counterfeit, altered, or falsely made document" or "any document lawfully issued to or with respect to a person other than the possessor" for purposes of obtaining employment in the United States. §§ 1324c (a)(1)-(3). Aliens who use or attempt to use such documents are subject to fines and criminal prosecution. 18 U.S.C. § 1546(b) . . .

Under the IRCA regime, it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies. Either the undocumented alien tenders fraudulent identification, which subverts the cornerstone of IRCA's enforcement mechanism, or the employer knowingly hires the undocumented alien in direct contradiction of its IRCA obligations.

*Id.* at 147–48. The Court noted it was asked to permit the "award [of] backpay to an illegal alien for years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by a criminal fraud," and it held that "awarding backpay to illegal aliens runs counter to policies underlying IRCA, policies the Board has no authority to enforce or administer." *Id.* at 147–49. Thus, "allowing the Board to award backpay to illegal aliens would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in IRCA. It would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations." *Id.* at 151. Accordingly, *Hoffman* held that the IRCA prohibited the plaintiff's claims.

13

At least one court in this District has addressed the more relevant issue of whether an individual can recover for economic losses in the personal injury tort context when that individual cannot legally obtain work in the United States in *Kalyta v. Versa Products, Inc.*, Civ. No. 07-1333, 2011 WL 996168 (D.N.J. Mar. 17, 2011). In *Kalyta*, the District Court explained that "[t]he principal goal of damages in personal-injury actions is to compensate fairly the injured party." *Id.* at *5 (citing *Deemer v. Silk City Textile Mach. Co.*, 193 N.J. Super. 643, 651 (N.J. App. Div. 1984)). "'The purpose, then[,] of personal injury compensation is neither to reward the plaintiff, nor to punish the defendant, but to replace plaintiff's losses.'" *Id.* (quoting *Domeracki v. Humble Oil & Ref. Co.*, 443 F.2d 1245, 1250 (3d Cir. 1971)). The *Kalyta* Court acknowledged that the New Jersey Supreme Court had not yet spoken on the availability of personal injury damages to individuals not authorized to work in the United States, but noted that the New Jersey Appellate Division has held that "'a well[-]established body of law holds that illegal aliens have rights of access to the courts and are eligible to sue therein to enforce contracts and redress civil wrongs such as negligently inflicted personal injuries.'" *Id.* at *6 (quoting *Montoya v. Gateway Ins. Co.*, 168 N.J. Super. 100, 104 (N.J. App. Div. 1979)). And, the *Kalyta* Court observed that, even though *Montoya* was decided "before Congress passed IRCA," *Mendoza v. Monmouth Recycling Corp.* reaffirmed *Montoya*'s sentiment. *Id.* (citing 288 N.J. Super. 240, 248 (N.J. App. Div. 1996)).

In *Mendoza*, the New Jersey Appellate Division compared workers' compensation to personal injury law and implied that personal injury remedies are also available to undocumented workers:

> [W]orkers' compensation rests upon both contract and tort principles-the contract right in effect substitutes for the tort right an employee would otherwise have. It would not only be illogical but it would also serve no discernible public purpose to accord illegal aliens the right to bring affirmative claims in tort for personal injury

14

> but to deny them the right to pursue the substitutionary remedy for
> personal injuries sustained in the workplace.

*Mendoza v. Monmouth Recycling Corp.*, 288 N.J. Super. 240, 248 (N.J. App. Div. 1996). "Surely, the effect on the worker of his injury has nothing to do with his citizenship or immigration status. If his capacity to work has been diminished, that disability will continue whether his future employment is in this country or elsewhere." *Id.* at 247.

Politz's reliance on *Crespo* is misguided. In *Crespo*, the plaintiff—an illegal immigrant—sued her employer under New Jersey's Law Against Discrimination ("LAD"). *Crespo*, 366 N.J. Super at 393. The Appellate Division noted that it was not determining "whether an employee's illegal alien status would shield a LAD-offending employer from non-economic damages." *Id.* In fact, the Appellate Division explained that "New Jersey's 'well[-]established body of law holds that illegal aliens have rights of access to the courts and are eligible to sue therein to enforce contracts and redress civil wrongs such as negligently inflicted personal injuries.'" *Id.* at 399 (quoting *Montoya v. Gateway Ins. Co.*, 168 N.J. Super. 100, 104 (App. Div.), *certif. denied*, 81 N.J. 402, 408 (1979)). In sum, "the *Crespo* Court only held that IRCA barred economic damages '[i]n the context of plaintiff's claims[,]'" which arose "'solely from her termination,' not from any injury." *Kalyta*, 2011 WL 996168, at *6 (quoting *Crespo*, 366 N.J. Super. at 394, 401)).

Here, Carcamo does not assert an improper termination or any other adverse employment action in the Carcamo Matter. He seeks only relief for his personal injuries. None of the parties have identified any New Jersey authority that stands for the proposition that legal employment is a prerequisite to recovery in a personal injury action. It is generally understood that "[e]ach person is entitled to the equal protection of the law" and that "every alien, whether in this country legally or not, has a right to sue those who physically injure him." *Hagl v. Jacob Stern & Sons, Inc.*, 396 F. Supp. 779, 784 (E.D. Pa. 1975) (citing *Sugarman v. Dougall*, 413 U.S. 634, 641–42 (1973);

15

*Graham v. Richardson*, 403 U.S. 365, 371 (1971); *Torao Takahashi v. Fish & Game Comm'n*, 334 U.S. 410 (1948); *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)).

In the absence of contrary authority, and considering the language of *Kalyta* and *Mendoza*, this Court concludes that Carcamo's immigration status does not bar him from potential recovery in the personal injury tort context. And, by extension, it follows that Carcamo's immigration status also does not permit its employers—direct or indirect—to avoid the clear exclusion to the policy in this case.[4]

Because Politz fails to cite any valid exception as to why the Policy's Bodily Injury To Contractors Or Subcontractors Exclusion should not apply here, this Court will **GRANT** Evanston's Motion to Dismiss.

### C.    MOTION TO AMEND

Finally, the Court addresses Morgan and East Coast's Motion to File an Amended Answer to Assert Cross-Claim for Coverage. Morgan and East Coast seek to include a cross-claim for insurance coverage against Evanston for coverage in the Carcamo Matter. (*See* Motion to File an Amended Answer Moving Br. at 3.) Morgan and East Coast assert that Politz has already sued for coverage and that "[t]here is no prejudice to any party to allow this amendment which simply allows East Coast and Morgan to assert the claim directly," instead of Politz asserting the claim on Morgan and East Coast's behalf. (*See id.* at 5.)

Morgan and East Coast's Motion to Amend is futile. The claim they seek to add is legally indistinguishable from the coverage claims already asserted by Politz that this Court has already concluded must be dismissed. The proposed amended Answer does not allege any new facts,

---

[4] The Court notes that, as a practical matter, finding that an employee without valid immigration status would entitle his or her employer to coverage on a policy of this type runs the risk of encouraging employers to hire undocumented workers. As noted by the Supreme Court in *Hoffman*, this would run contrary to public policy.

16

identify any different policy language, or advance a new argument pertaining to coverage. Note, too, that the Court considered Morgan and East Coast's Opposition to Evanston's Motion to Dismiss.

Because the Policy provides that no coverage exists for the named insured, no coverage can exist for any putative additional insureds as a matter of law. As such, Morgan and East Coast's Motion to File an Amended Answer will be **DENIED**.

## V.      **CONCLUSION**

For the reasons stated above, the Court will **GRANT** Evanston's Motion to Dismiss and Motion for Judicial Notice. The Court will **DENY** Morgan and East Coast's Motion to Amend. An appropriate Order will follow.

Date: March 31, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

17